WALTER L. PARSLEY et al. v. A. DAVID.

*Lien of Material-man—Sufficiency of Complaint—Payments by Owner After Notice—Evidence—Verdict and Judgment.*

1. Where, in an action to enforce a material-man's lien under sections 1801–2 of *The Code*, the complaint alleged that, after the lien was filed, the defendant paid the contractor $375, and also $500 as a consideration for the cancellation of the contract, thus placing it beyond his power to complete his contract, which allegations the answer denied, and the issue thus raised was tried by the jury, this Court will deny a motion to dismiss the action because "the complaint does not state facts sufficient to constitute a cause of action, in that it fails to allege that anything was due from the defendant to the contractor when the lien was filed."

2. In such case, it is competent to prove by the defendant how much he had paid the contractor under the contract at the time notice was served on him by the plaintiffs.

106—15

3. Where the defendant had testified that he had not paid the contractor anything after plaintiffs' notice was served, and had been cross-examined as to payments thereafter made to show that they were made on account of the contractor, it is competent to corroborate the defendant by the testimony of his book-keeper as to the date of the last payment to the contractor.

4. In such case, where the jury found that the defendant had made certain payments after notice served on him by plaintiffs, among them a certain sum to the foreman of contractor to be used in paying hands, and also that the defendant was not indebted to the contractor at the time of said notice, the Court having put the burden on the defendant to show, by a preponderance of testimony, that the payments were not made under the contract between defendant and contractor: *Held*, that judgment was properly entered for the defendant.

·This was a CIVIL ACTION, tried before *Bynum, J.,* at September Term, 1889, of NEW HANOVER Superior Court.

The defendant had made a contract with one Frank Wood, by which the said Wood was to build a house for him in the city of Wilmington, and the plaintiffs, who were engaged in the manufacture and sale of lumber, furnished material, which was used in the building of said house, to the value of $339.24. The said sum was not paid by the said Wood, and, on the 12th of October, 1886, the plaintiffs gave notice to the defendant, as required by sections 1801 and 1802 of *The Code*, to create a lien on said house, and this action is brought to enforce payment.

Among other things, the plaintiffs allege that, after the notice was given to the defendant, "the said defendant did pay the said Wood sums of money amounting to $375, as plaintiffs are informed and believe."

They further allege that, after the said notice, the defendant "did pay to said Frank Wood a large sum of money, to-wit, about $500, as a consideration to said Frank Wood to give up the contract of construction, thus putting it beyond the power of *defendant* (contractor?) to complete his contract."

These allegations are denied in the answer.

The following issues were submitted to the jury:

1. Did the plaintiffs sell and deliver to one Frank Wood, the contractor, building material of the value of $345.48, used in the erecting of defendant's house?

2. Did the defendant pay to Frank Wood, or his agent, any money under his contract after the notice served on him by plaintiffs? If so, how much?

3. Was the defendant indebted to said Wood at the time of said notice? If so, how much?

4. Did defendant pay to any person, for material furnished and used in said building, any money, after said notification to him by plaintiffs? If so, how much?

5. Was any part of said sum paid by defendant, because he had assumed the payment thereof, independent of the contract with Wood? If so, what amount?

W. S. Parsley, one of the plaintiffs, testified "that before Wood began work on the house of the defendant, the defendant told him he had nothing to do with the purchase of the material, but he did not intend anybody in Wilmington should lose anything on it."

It was in evidence for plaintiffs that, after the notice of Parsley & Wiggins to the defendant, and before the contract between Wood and the defendant was cancelled, the defendant paid to one Fuller, foreman of Wood under the contract, from $180 to $210, being one week's pay-roll for the hands employed in doing the work.

On cross-examination witness said: "It was to pay off the hands, and if any money was paid under the contract this was; that defendant told him of the notice given by plaintiffs, but that his lawyer told him to pay off the hands, and he did, and this was the last money he drew under the contract with Wood."

It was in evidence for the defendant that, under his contract with Wood, made March 23d, 1886, he was to pay $6,500 for building his house. Wood was to furnish all materials and complete it according to certain plans and

specifications, forming part of the contract, and that, on the 20th day of October, 1886, Wood, finding it impossible to complete the buildings, by reason of "having drawn an amount in excess" of his contract, and the "said David being unwilling to pay or advance more" money to complete the said buildings, and being himself pecuniarily unable to do so, and being "further satisfied that the balance which would be due and owing on the contract price would be utterly insufficient to cover the expenses and outlay incident thereto," executed to said David a release "from any and all liability," by reason of said contract, and acknowledged full receipt of all moneys due to him from said David.

Mr. Marsden Bellamy, who was attorney for defendant, and drew the release executed, further testified: That the day it was signed Wood came to witness' office; said that he had overdrawn from David, that he had no credit, and David would make no advances. I went to David with him at his request. Wood then said David had largely overpaid him, and had refused to pay him any more. He wanted David to pay him $500. David refused. Said he had paid him $500 before to pay debts, and he had not done it, but had appropriated it to his own use. Witness further says he then drew the cancellation of the contract; that David paid him no money. That David came to witness about paying the hands who were at work on the house, and he advised him to open an account and pay the hands himself, as he had to complete his building.

Upon cross-examination, says he means by paying the hands, the payment that was made to Fuller the Saturday after notice given by Parsley.

The defendant testified in his own behalf as follows: "I contracted in May, 1886, with Wood; he was to furnish material and finish my house for $6,500."

Proposed to ask witness how much he had paid Wood under the contract when the notice was served by plaintiffs. Objection; overruled, and exception.

Witness answered: "I had paid Wood $5,800. I made no alterations in the original plan of the house, and I paid out for completing it $2,400, after paying Wood $5,800. I did not pay Wood a cent after October 12, 1886. On September 20th I paid him $500; did not owe it to him, but gave it to him to pay debts he said he owed. I paid the hands after this notice on my own account. I paid the pay-roll, because I promised the workmen to do it when I cancelled the contract. I was advised to do this by Mr. Bellamy. I did not owe Wood a dollar. I told Fuller when I was notified by plaintiffs that I could not pay Wood any more, but to keep the hands working and I would pay them."

Upon cross-examination, says: "The contract was cancelled October 20th  I paid to Fuller to pay the hands $119.84 on October 16th; I paid Wilson $85 for shingles after October 12th. I had agreed with Wilson when the shingles were shipped to become responsible for this. I gave Barker a suit of clothes in settlement of a bill to Wood, after October 12th, about $30 or $35. Mr. Strange had a suit against Wood, and I settled it at $40; the claim was $800; I paid him $40; he gave a receipt in full; don't know whether receipt was as to Wood or not. I paid Springer $75 after October 12th; I had agreed with Springer, when Wood made the account, to be responsible for it. Springer says the account was made by Wood in June, 1886. I did not pay Lee, Grant, or Foster, or Giles & Murchison any debts made by Wood for material furnished for the house. I did pay for the mantels. A certain amount was estimated in the contract for the mantels, and I was to retain this amount, and select, and order, and pay for them, which I did, and they were shipped to me, not to Wood."

W. A. Dick, a witness for defendant, testifies: He was book-keeper and cashier for defendant until December, 1886, and kept the account between Wood and the defendant.

Proposed to ask witness, for the purpose of corroborating defendant as to time of his last payment to Wood, when the account between Wood and defendant closed. Overruled, and excepted.

Witness states: " Do not know whether it was by the consent of Wood or not, but the books showed no entry on that account after October 9, 1886; after that it was kept as a new account of the defendant."

Upon cross-examination, says: "Wood knew nothing about the closing of the account."

Upon the close of the evidence the plaintiffs asked for the following instructions:

" 1. It being shown that said payment to Fuller was paid before the contract was cancelled, the burden rests upon the defendant to show that the said payment was not made under the contract.

" 2. If the jury believes that A. David paid the money to D. B. Fuller, foreman of Frank Wood, after the notification of the plaintiff, and before said David F. Wood cancelled the contract between them, whether the same was actually due according to the terms of the contract (there being more money coming to Wood when the contract was completed), such payment would be a payment under the contract, and the jury must find second issue Yes."

The Court gave the instructions, adding to the second the following: " Unless the defendant satisfies you, by a preponderance of the testimony, that the payment was not made under the contract with Wood."

The Court instructed the jury as to the third issue :

" 3. If, from the whole evidence in this case, you find that the contract between Wood and the defendant was, that Wood was to build for the defendant and deliver to him a completed house, and when completed defendant was to pay him $6,500, then you will answer the third issue Yes, as the

defendant admits the house was not completed when the notice was served, and that he had only paid him $5,800.

" 4. If you find the contract between the parties to be that Wood was to build for the defendant and deliver to him, completed, the house, and to be paid for it when so completed and delivered, $6,500, and after the making of the contract, or at the time it was made, David agreed with Wood to advance to him money, as the house was being built, to be accepted by Wood in part payment of the $6,500, and to be accounted for by him on a final settlement after the house was completed and delivered, and defendant had paid to Wood $5,800 before the notice was served on defendant by the plaintiff, and you shall further find that the $5,800, paid by David and accepted by Wood, paid for all the material furnished by Wood and the work done by him on the house of the defendant at the time the notice was served, you will answer the third issue No, and the burden is on the defendant to satisfy you, by a preponderance of the testimony, that the $5,800 was paid by him, and accepted by Wood, to be credited on the amount of $6,500; and further, to satisfy you, by a preponderance of the testimony, that the $5,800 paid Wood for all the material furnished by him was before service of the notice by the plaintiffs.

" 5. The defendant had a right to pay any and all bills of the said Wood that he chose to pay without subjecting himself to liability to the plaintiff, unless the defendant was indebted to Wood on the contract at the time of such payment."

" The jury responded Yes to the first issue by consent of the parties.

" To the second issue, Yes, $119.84.

" To the third issue, No.

" To the fourth issue, Yes, $230.

" To the fifth issue, Yes, $190."

The plaintiffs moved, on the verdict, for judgment against the defendant for $159.84, which was refused.

There was judgment for the defendant, and the plaintiffs appealed.

*Mr. John D. Bellamy*, for plaintiffs.
*Mr. Sol. C. Weill*, for defendant.

DAVIS, J.—after stating the facts: It is proper to state that the record shows that the plaintiffs asked for a new trial upon "the ground that the third issue was found contrary to the weight of the evidence, in fact, found without evidence." But this was abandoned by counsel in this Court.

In this Court, the defendant moved to dismiss the plaintiffs' action, as upon demurrer *ore tenus*, for the reason that the "complaint does not state facts sufficient to constitute a cause of action, in that it fails to allege that anything was due from the defendant to Wood, the contractor, when the lien was filed." For this he cites the case of *Turner* v. *Strensil*, 70 California, 28, in which it is said: "A material-man is only entitled to be paid from that portion of the contract price which remains due and unpaid to the contractor by the owner when he (the material-man) files his lien, and when the complaint fails to allege that anything is due from the owner to the original contractor when plaintiffs' lien was filed, it does not contain a statement of a cause of action." In this case no such allegation was made, and the Court said: "It nowhere appears that the owner had not paid to the contractors, prior to the filing of the lien, all that was due to them."

In the case before us, it is alleged that the defendant paid the contractor, after the lien was filed, the sum of $375, and that he also paid $500 to Wood as a consideration for the cancellation of the contract, and thus placing it beyond his power to complete his contract.

These allegations were denied, and whether the defendant owed the plaintiff anything or not, was a controverted question which, though decided by the jury in the defendant's favor, presented an issue of fact fairly raised by the complaint and answer, and the motion to dismiss cannot be allowed.

1. The plaintiffs except to the testimony of the defendant, in regard to payments made to Wood, under the contract, when the notice was served by the plaintiffs. How, otherwise, could it be determined whether the "defendant was indebted to the said Wood at the time of the said notice?" If it was competent for the defendant, as it clearly was, to prove that he was not indebted to the contractor when the lien was filed, then it was competent to prove that he had paid what he owed him up to that time. The evidence was competent, and there can be no question as to the competency of the witness.

2. The testimony of the witness Dick is objected to. The defendant had testified that he did not owe Wood a dollar after October 12th, and had not paid him a cent. He was cross-examined as to various payments made after that time, manifestly with a view to show that they were made for or on account of Wood, and the testimony of Dick was competent to corroborate him, as tending to show that the payments were not made on any indebtedness to Wood.

3. The plaintiffs insist that—the jury having found, in response to the second issue, that the defendant had paid to Frank Wood, or his agent, under the contract, $119.84 after service of notice; and, in response to fourth issue, that he had paid $230 for material furnished and used in the building after said notification—they are entitled to judgment, notwithstanding the finding upon the third issue, that the defendant was not indebted to Wood at the time of said notice. The authorities cited by the counsel for the appellant do not go to that extent.

In *Wright* v. *Roberts,* 50 N. Y. (Supreme Court Reports), 415, it appeared that "a sum of money had been earned, according to agreed price, in excess of all payments to Lyons, sufficient to pay the lienors." It is true that the contract had not been fully performed, but enough had been done under it sufficient to pay the "lienors."

In *Mayer* v. *Mutcher,* 50 New Jersey, 162, the contractor had not completed the contract, and it was held that the lien attaches not only to what may be due to the contractor at the time of the notice, but whenever the period arises when the owner could be compelled to answer to the contractor for any portion of the contract price, he must respect the notice theretofore given. It was held that, if money became due after the notice, the lien would attach, and it was said that the lien would attach if the money could be sued for and recovered. The cases cited by counsel for appellant are distinguishable from the case before us, in which, according to the verdict, nothing was due at the time of the notice, and nothing ever became due.

In *Pinkston* v. *Young,* 104 N. C., 102, it is said: "If, at the time of such notice (under *The Code,* §§ 1801, 1802), the owner or lessee of the land has not paid to the contractor the money due, or to come due, to him, or an account of the contract, and shall refuse to retain out of the amount so due so much, if there shall be so much due, as shall be due or claimed by the party having the lien, the latter may proceed to enforce his lien," &c.

In *Bradburn* v. *S. L. Grape and Wine Co.,* 67 N. Y. Rep. (Court Appeals), 215, the Court held that the defendant had a right to prove that the contractor became unable to complete the building, and that he was forced to complete it himself, and if, in consequence, he made payments to third parties, they could not be treated as admissions of indebtedness to the contractor. It may be that if, by any act of the owner, the contractor was prevented from performing his

contract, and the contractor would have a right to recover, either upon the contract or upon a *quantum meruit* from him, a material-man's or a laborer's lien would attach to the amount that might be so recovered, but we think that he is entitled, by virtue of his lien, to have his debt paid out of such sums as the contractor owes at the time of the filing of the notice, or might afterwards become entitled to secure under his contract, and no more.

The defendant having made payments after the notice, his Honor put the burden upon him of showing, by a preponderance of testimony, that the payments were not made under the contract with Wood. There was nothing in the charge of his Honor of which plaintiffs could complain, and there was no error in the judgment.

Judgment affirmed.